☑ Original          ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>Records and information associated with the cellular telephone<br>assigned call number (414)-317-3164, (TARGET NUMBER), that are<br>stored at premises controlled by T-Mobile U.S.A. ("the Provider"),<br>headquartered at 4 Sylvan Way, Parsippany, NJ 07054. | )<br>)<br>)  Case No.  26-810M(NJ)<br>)<br>)<br>)<br>) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

Please see Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before ___1/21/2026_____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.  ☒ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to ___Honorable Nancy Joseph___ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*  ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:     ___1/7/2026 @ 2:29 p.m.___          *[signature: Nancy Joseph]*
                                                              *Judge's signature*

City and state:     ___Milwaukee, WI___          Honorable Nancy Joseph, U.S. Magistrate Judge
                                                              *Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**<u>ATTACHMENT A</u>**

**Property to Be Searched**

This warrant applies to records and information associated with the cellular telephone assigned call number (**414)-317-3164**, (TARGET NUMBER), that are stored at premises controlled by T-Mobile U.S.A. ("the Provider"), headquartered at 4 Sylvan Way, Parsippany, NJ 07054.

## <u>ATTACHMENT B</u>

### Particular Things to be Seized

**I.       Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period of August 1, 2025, through August 4, 2025:

   a.   The following information about the customers or subscribers of the Account:

   i.   Names (including subscriber names, usernames, and screen names);

   ii.   Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii.   Subscriber personal identification, to include name, document control numbers, date of birth, photo, or any other type of identification documentation presented by the parties opening or in control of the accounts;

   iv.   All device information identifying the specific cellular phone, tablet etc. related to this phone number **414-317-3164** and account, to include IMSI, IMEI, MEID, and ESN

   v.   Local and long-distance telephone connection records;

   vi.   Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   vii.   Length of service (including start date and closing date (if any)) and types of service utilized;

12

<ol type="i" start="8">
<li>Physical address where wireless telephone contract was initiated, or the contract was initiated;</li>

<li>Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");</li>

<li>Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and</li>

<li>Means and source of payment for such service (including any credit card or bank account number) and billing records.</li>
</ol>

<ol type="a" start="2">
<li>All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:
<ol type="i">
<li>the date and time of the communication, the method of the communication, and the source and destination of the communication such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses (data sessions); and</li>

<li>information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received for both call detail records and any data sessions.</li>
</ol>
</li>

<li>Any and all specialized location data referred to by different phone companies as Per Call Measurement Data (PCMD), Real Time Tool data (RTT), Network Element Location Service data (NELOS) and/or Timing Advance or True Call data, to include estimated locations of the device based on cellular measurements on all networks to include 2G, 3G, 4G, and/or 5G networks.</li>
</ol>

## II.     Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations 18 U.S.C. § 844(i). During the period August 1, 2025, through August 4, 2025.

13

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) Case No. 26-810M(NJ) |
| Records and information associated with the cellular telephone assigned call number (414)-317-3164, (TARGET NUMBER), that are stored at premises controlled by T-Mobile U.S.A. ("the Provider"), headquartered at 4 Sylvan Way, Parsippany, NJ 07054. | ) ) ) ) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

Please see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

❏ contraband, fruits of crime, or other items illegally possessed;

❏ property designed for use, intended for use, or used in committing a crime;

❏ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 844(i) | Arson |

The application is based on these facts:

Please see Affidavit.

☑ Continued on the attached sheet.

❏ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

**Matthew Bammert** Digitally signed by Matthew Bammert
Date: 2026.01.06 12:49:27 -06'00'

*Applicant's signature*

Mattew Bammert, Special Agent - ATF

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

telephone *(specify reliable electronic means)*.

Date: 1/7/2026

*Judge's signature*

City and state: Milwaukee, WI

Honorable Nancy Joseph, U.S. Magistrate Judge

*Printed name and title*

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Matthew Bammert, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call number **414-317-3164**, (**TARGET NUMBER** ) that is stored at premises controlled by T-Mobile U.S.A., a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, NJ 07054.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require T-Mobile U.S.A to disclose to the government copies of the information further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2.      I am a Special Agent of the United States Justice Department, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), currently assigned to the Milwaukee Field Office. I have been employed since December 2023. Prior to ATF I was employed as a Police Office for the United States Secret Service Uniform Division for a little over 5 years. I also have a Bachelor of Science Degree in Policial Science Pre Law from Northern Michigan University.

3.      Through my law enforcement career, I have attended 4 separate training academies. For ATF I have completed approximately 26 weeks of training at the Federal Law Enforcement Training Center (Glynco, Georgia) and ATF's National Academy. The training included courses on constitutional law such as search and seizure, and conducting investigations through searches,

arrests, interviews, surveillance, and evidence collection. The training also included firearms trafficking, drug trafficking, firearms recognition, arson and explosives investigation. It covered an in depth break down of the requirements to possess, manufacture, deal, sell, and transfer National Firearms Act ("NFA") weapons and requirements for selling, dealing, and manufacturing firearms.

4.      Over the course of my career, I have investigated federal firearms violations to include the trafficking, manufacturing and illegal possession of firearms. I have also investigated federal arson violations to include violations of  18 U.S.C. § 844(i). I know from training and experience that those that commit crimes commonly communicate, photograph, videotape, and organize using electronic devices, including by phone call, text message, electronic mail, messaging application, and social media. I also know from training and experience that cell phones store location data of the device.

5.      Your Affiant has personally participated in the investigation of the offenses discussed below.  The facts and information contained in this affidavit are based upon my personal knowledge, information obtained from federal and local law enforcement officers, and information obtained from review of evidence and analyses of reports.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6.      Based upon the facts set forth in this affidavit, I submit that there is probable cause to believe that the records and other information described in Attachment A and Attachment B will help provide evidence to law enforcement which may assist or provide leads in the ongoing investigation for the events described below, and to determine the nature and scope of their activities which were committed in violation of 18 U.S.C. §  844(i).  Based on the information

2

detailed below, there is probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

## PROBABLE CAUSE

7.     On August 2, 2025, police officers with the Milwaukee Police Department (MPD) began investigating a fire of a tow truck that occurred at 1228 S. 12th St, Milwaukee, WI 53204, at approximately 1830 hours on August 2, 2025. The tow truck was a 2013 Dodge Ram 4500 pickup up truck registered to Gamboa's Trucking LLC. Through the investigation the cause of the fire was classified as incendiary by the Milwaukee Police Department and there were no plausible ignition sequences besides human involvement and the use of an open flame. The fire caused significant damage to the engine, windshield and the tow truck would not start.

8.     On August 3, 2025, officers with MPD responded back to 1228 S. 12th St, Milwaukee, WI 53204, to begin investigating a second fire that occurred to the same tow truck at approximately 0435 hours on Augst 3, 2025. The first fire that occurred on August 2 was extinguished by the Milwaukee Fire Department (MFD) and the second fire that occurred the following day was a separate fire that was also extinguished by MFD. Through the investigation the cause of the second fire was classified as incendiary by the Milwaukee Police Department and there were no plausible ignition sequences besides human involvement and the use of an open flame. The second fire caused additional damage to the same area of the first fire and also damaged the passenger interior of the tow truck.

9.     The victim and owner of Gamboa's Trucking LLC, D.V.G., reported to MPD that on August 2, 2025, at approximately 1745 hours he observed a male attempting to open the doors of his tow truck. He explained that he confronted that male and the two of them got into an argument that led to both of them pushing each other. The male subject left the area and D.V.G. explained

3

to officers that his neighbors told him that they believed the individual he confronted was Juan MARRERO BOLORIN. D.V.G. also provided a description of the individual he confronted. This description included long brown hair but balding on the crown area and an owl tattoo on the neck. D.V.G. also showed officers a booking photo with the name "Juan MARRERO BOLORIN" from a Fox6now.com article and told officers that this is the individual he got into the altercation with. D.V.G. also reported to MPD after the second fire occurred that he believed the fire was set by the same suspect that set the tow truck on fire the first time.

10.     Officers interviewed the 911 caller for the first arson who also witnessed both the altercation between D.V.G. and MARRERO BOLORIN, and the fire to the tow truck. The 911 caller explained to MPD that the same individual D.V.G. confronted for pulling on his tow truck door handles, is the individual the 911 caller witnessed start a fire to the tow truck. The 911 caller explained he heard a "whoosh" sound which they described as the sound when gas is lit. The 911 caller explained to officers that they looked into the direction of the sound, which was on the east side of S. 12th St and observed an unknown male standing near the passenger side of a white tow truck which had its hood on fire. The 911 caller stated that they observed the unknown male raise his index finger to his mouth, simulating a "shhh' gesture. He further explained to MPD that the unknown male then fled the scene northbound on S.12th St as he was giggling.

11.     On August 6, 2025, law enforcement conducted a neighborhood canvas of the area where the arson occurred to obtain any surveillance videos. Agents were able to obtain surveillance video from Iglesia Pentecostal Emanuel Church at 1137 W. Scott, Milwaukee, WI 53204. The church has a side camera which captures S. 12th just north of the arson location. One video  obtained showed that at approximately 1824 hours, a white male, with long black hair, a ribbon face tattoo, a grey t-shirt and grey shorts walking eastbound on W. Scott then south on 12th St. while smoking

4

a cigarette and holding a what appears to be a bottle and yellow rag (pictured below). The direction of travel of this individual is towards the arson location. I know from my training and experience that a rag can serve as an ignition device and commonly with cigarettes are an ignition source such as a lighter or matches. An additional video showed that at approximately 1826 hours, this same individual running north on 12th St. away from the arson location but without the item previously observed in his hand. In this video, the individual, while running, is pointing to a male in blue shirt across the street and laughing. The male across the street is the 911 caller to the arson. The actions of the individual in this video are consistent with the statement the 911 caller provided to MPD. This video also shows the individual running to a black SUV that is located on W. Scott St. on the west side of 12th Street.



12.     On August 27, 2025, MPD booked MARRERO BOLORIN into custody for an unrelated felony domestic violence case for which he had an active arrest warrant. The photo below is the booking photo that was taken of MARRERO BOLORIN on the date of his arrest. The booking

5

photo shows the same ribbon face tattoo from the surveillance video, and the booking photo matches the description of an owl tattoo on his neck and long, but balding hair on the crown area that was described by the arson victim.



13.     During the course of the investigation officers submitted to the Wisconsin Regional Crime Lab swabs and fire debris from the arson location. The Wisconsin Regional Crime Lab concluded that there was gasoline on one of the samples of fire debris.

14.     On December 9, 2025, a federal arrest warrant (25-CR-240) was issued for Juan MARRERO BOLORIN out of the Eastern District of Wisconsin for violation of  18 U.S.C. § 844(i). On December 16, 2025, the United States Marshal Service (USMS) arrested MARRERO BOLORIN on this warrant after a brief foot pursuit. Shortly before the execution of the arrest warrant MARRERO BOLORIN was observed by USMS on his cellphone. During the arrest, a cell phone was located on MARRERO BOLORIN's person.

15.     On December 18, 2025, the Honorable Magistrate Judge William E. Duffin issued a federal search warrant out of the Eastern District of Wisconsin for the search and extraction of the cell phone located on MARRERO BOLORIN's person on the date of his arrest. On December 19,

6

2025, ATF received the cell phone extraction from this cell phone. The phone extraction showed that the device's phone number is the TARGET NUMBER, **414-317-3164**. A law enforcement database search of the TARGET NUMBER also indicates the TARGET NUMBER is listed as a wireless phone service operated by T-Mobile U.S.A.

16.     Based on my training and experience, I know that a person who is involved in criminal activity often uses electronic devices, including but not limited to wireless telephones, to aid in their criminal activities.  I also know, based on my training and experience, suspects frequently communicate with each other prior to, during and/or after the commission of a crime, and frequently utilize cellular phones during the commission of a crime. The information obtained from this cellphone usage can be of significant assistance to the investigation and evidence in a subsequent criminal prosecution by showing the communication records/pattern(s) between any possible suspect and co-conspirators.  Location information and call detail records generated by the use of cellphones can indicate the general geographic area that the mobile device was located at, as well as provide investigative leads of whether witnesses or suspects communicated with anyone prior to, during and/or after a criminal event, which can associate the cellular phone/device to a specific suspect or individual.

17.     Based on my training and experience, I know that T-Mobile can collect cell-site data about the **TARGET NUMBER**.  I also know that wireless providers such as T-Mobile typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

18.     Based on my training and experience, I know that wireless providers such as T-Mobile typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and

7

address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as T-Mobile typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crime under investigation because the information can be used to identify the **TARGET NUMBER**'s user or users and may assist in the identification of co-conspirators and/or victims.

19.     Your Affiant is aware that many cellphones, tablets and computers capture or otherwise store GPS location tracking/logging files, may provide additional evidence as to the targets travels and may provide evidence as to the location where the alleged illegal actions occurred. In my training and experience, I have learned that T-Mobile is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower

8

closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

20.     Based on my training and experience, I know that T-Mobile can collect cell-site data on a prospective basis about the **TARGET NUMBER**.  Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication.   I also know that wireless providers such as T-Mobile typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

21.     Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it.  Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

22.     Based on my training and experience, I know that wireless providers such as T-Mobile typically collect and retain information about their subscribers in their normal course of business.

9

This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as T-Mobile typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the **TARGET NUMBER**'s user or users and may assist in the identification of co-conspirators and/or victims

## AUTHORIZATION REQUEST

23.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

24.     I further request that the Court direct T-Mobile U.S.A to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on T-Mobile U.S.A., who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

10

## ATTACHMENT A

### Property to Be Searched

This warrant applies to records and information associated with the cellular telephone assigned call number (**414)-317-3164**, (TARGET NUMBER), that are stored at premises controlled by T-Mobile U.S.A. ("the Provider"), headquartered at 4 Sylvan Way, Parsippany, NJ 07054.

11

## ATTACHMENT B

### Particular Things to be Seized

**I.     Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period of August 1, 2025, through August 4, 2025:

    a.   The following information about the customers or subscribers of the Account:

        i.   Names (including subscriber names, usernames, and screen names);

        ii.   Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii.   Subscriber personal identification, to include name, document control numbers, date of birth, photo, or any other type of identification documentation presented by the parties opening or in control of the accounts;

        iv.   All device information identifying the specific cellular phone, tablet etc. related to this phone number **414-317-3164** and account, to include IMSI, IMEI, MEID, and ESN

        v.   Local and long-distance telephone connection records;

        vi.   Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        vii.   Length of service (including start date and closing date (if any)) and types of service utilized;

12

viii. Physical address where wireless telephone contract was initiated, or the contract was initiated;

ix. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

x. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

xi. Means and source of payment for such service (including any credit card or bank account number) and billing records.

b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

i. the date and time of the communication, the method of the communication, and the source and destination of the communication such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses (data sessions); and

ii. information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received for both call detail records and any data sessions.

c. Any and all specialized location data referred to by different phone companies as Per Call Measurement Data (PCMD), Real Time Tool data (RTT), Network Element Location Service data (NELOS) and/or Timing Advance or True Call data, to include estimated locations of the device based on cellular measurements on all networks to include 2G, 3G, 4G, and/or 5G networks.

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations 18 U.S.C. § 844(i). During the period August 1, 2025, through August 4, 2025.

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC
## RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE
## 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by T-Mobile U.S.A., and my title is

_____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of T-Mobile U.S.A. The attached records consist of _____ (pages/CDs/megabytes)]. I further state that:

a.       all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of T-Mobile U.S.A., and they were made by T-Mobile U.S.A. as a regular practice; and

b.       such records were generated by T-Mobile U.S.A. electronic process or system that produces an accurate result, to wit:

1.       the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of T-Mobile U.S.A. in a manner to ensure that they are true duplicates of the original records; and

2.      the process or system is regularly verified by T-Mobile U.S.A., and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____          _____
Date                                                        Signature